UNITED STATES of America,
Plaintiff–Appellee,

v.

Stanley E. ALGEE, Defendant–
Appellant.

No. 01–2208.

United States Court of Appeals,
Seventh Circuit.

ARGUED Sept. 4, 2002.

DECIDED Oct. 31, 2002.

Amanda A. Robertson (Argued), Office of the United States Attorney, Benton, IL, for Plaintiff–Appellee.

Mark A. Brand, Monica M. Tynan (Argued), Quarles & Brady, Chicago, IL, for Defendant–Appellant.

Before FLAUM, Chief Judge, and CUDAHY and KANNE, Circuit Judges.

FLAUM, Chief Judge.

After a jury trial, Stanley Algee was convicted of conspiracy to distribute and to possess with intent to distribute crack cocaine, conspiracy to possess with intent to distribute marijuana, possession of a firearm by a felon, and use of a firearm during a drug-trafficking offense, and was sentenced to a total of 300 months' imprisonment. Algee now challenges his convictions and sentences, arguing among other things that his Sixth Amendment rights were violated when the district court disqualified his attorney of choice. We affirm.

## I. BACKGROUND

In December 1996 Algee was arrested after he broke into a residence in Grand Tower, Illinois. He was later charged in an Illinois circuit court with armed violence, home invasion, armed robbery, aggravated battery, and unlawful possession of a weapon. Attorney Paul Christenson entered his appearance for both Algee and co-defendant Brent Battles.

Following his arrest Battles gave a taped statement implicating Algee, himself, and a third individual, Marvin Gates, in the Grand Tower incident. After Gates was arrested, Christenson entered an appearance on his behalf and moved to withdraw as counsel for Battles. The state, meanwhile, moved to disqualify Christenson from representing Algee and Gates, asserting that he had a conflict of interest due to his prior representation of Battles. The trial court granted the state's motion.

Algee and Battles were convicted following a jury trial and a bench trial, respectively. Gates was acquitted. On appeal, however, the Appellate Court of Illinois reversed Algee's and Battles's convictions, holding that the state had violated Illi-

nois's speedy-trial statute. *People v. Battles*, 311 Ill.App.3d 991, 244 Ill.Dec. 109, 724 N.E.2d 997 (2000).

After their state convictions were reversed, Algee and Battles were indicted in federal district court on charges relating to the Grand Tower incident. Algee was specifically charged with unlawful possession of a firearm by a felon and using or carrying a firearm during and in relation to a drug-trafficking offense. A superseding indictment was later returned, adding the drug-distribution charges.

After Algee retained Christenson to represent him in the federal case, the government moved for disqualification, claiming that Christenson had an unwaivable conflict of interest because of his prior representation of Battles and Gates and because Christenson had testified as a defense witness during Algee's state-court trial. In support of its motion, the government asserted that Gates had given a statement implicating Algee in the Grand Tower offenses and was expected to testify against him. The government also pointed to the taped statement given earlier by Battles. After a magistrate judge denied the motion, the government moved for reconsideration, raising new allegations that Christenson had received cocaine from Algee in exchange for legal services. The magistrate judge then vacated his earlier ruling and referred the matter to the district judge. The same day, co-defendant Battles filed his own motion to disqualify Christenson, asserting that during the state-court proceedings "a direct conflict of interest arose between Mr. Christenson's representation of Mr. Battles and his representation of either Mr. Algee or Mr. Gates." Battles indicated in his motion that he was unwilling to waive the conflict.

A hearing was held on the two motions, during which the government advised the district court of new information that one of Christenson's then-clients, Eldridge

Hartley, had recently implicated Algee and was expected to testify as a government witness. After considering arguments from both sides, the district court stated:

> [T]he problem is . . . where you [Christenson] represented another client, two of them that are potential witnesses against Mr. Algee, the present defendant before the Court that you represent—you represented all three of them at one time—how do we ever sort out, how do we ever sort out what information you got from them and to be able to set that aside and that can never be used or considered from them coming in on the witness stand and testifying against your client and you cross-examining them? . . . [I]t's almost impossible for an attorney to represent two defendants in a criminal case at any time. And you must have talked to Mr. Battles. You must have talked to Mr. Gates. You must have acquired some information, and you're on the hot seat with this whole thing ethically.

The court also found that "the bare allegations of you [Christenson] being involved in a potential drug conspiracy with the client that you want to represent here poses enormous problems." Thus concluding that there was a material conflict that was nonwaivable, the court granted the government's and Battles's respective motions.

## II. DISCUSSION

■ Algee's primary contention on appeal is that his Sixth Amendment rights were violated when the district court disqualified Christenson, his attorney of choice. It is well-settled, however, that a criminal defendant's right to his chosen attorney may be outweighed by a serious potential for conflict due to the attorney's prior representation of other defendants charged in the same criminal conspiracy. *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *United*

*States v. Combs,* 222 F.3d 353, 361 (7th Cir.2000). Further, because of the dangers associated with multiple representation, a district court must be allowed "substantial latitude" in refusing waivers of conflicts of interest. *Wheat,* 486 U.S. at 163, 108 S.Ct. 1692. We therefore review a district court's refusal of a waiver only for an abuse of discretion. *Combs,* 222 F.3d at 360.

This case is similar to *Wheat,* where the Supreme Court upheld the district court's refusal to allow the defendant to substitute an attorney who had previously represented two other defendants charged in the same criminal conspiracy. 486 U.S. at 164, 108 S.Ct. 1692. The Court reasoned that the potential for conflict, when looking at the situation as it existed before trial, was evident—that is, in the likely event that the defendant's co-conspirators were to testify, his chosen counsel would have been unable ethically to provide vigorous cross-examination. *Id.* Thus, acknowledging that the trial court was in the best position to evaluate the facts and circumstances of each case, the Court concluded that there had been no abuse of discretion. *Id.; see also Combs,* 222 F.3d at 361–62 (district court was within its discretion in dismissing a defense attorney who had earlier given legal advice to a key government witness).

■ Here the district court was confronted with a situation like that in *Wheat*—Christenson, Algee's counsel of choice, had previously represented Battles, a co-defendant charged in the same criminal conspiracy. Further, Christenson had also represented Gates, whom the government intended to call as a witness, and was then currently representing Hartley, another potential government witness. Given these circumstances we cannot say that the court's decision to disqualify Christenson was an abuse of discretion. The court foresaw that Battles and Gates would be the principal witnesses for the government and reasonably concluded that ethical constraints would prohibit Christenson from cross-examining them in any meaningful way. This case in fact presents a more compelling argument for disqualification than did *Wheat* because Battles joined in the motion to disqualify Christenson, whereas the co-defendants in *Wheat* were willing to waive their rights to conflict-free counsel. *Wheat,* 486 U.S. at 156, 108 S.Ct. 1692; *see also United States v. O'Malley,* 786 F.2d 786, 792 (7th Cir.1986) (in deciding to disqualify defendant's chosen attorney, district court properly considered interests of the attorney's former client, who was also a key government witness, where that client had made it clear that he viewed the risk of an intrusion upon his attorney-client privilege as substantial).

■ Turning to Algee's remaining arguments, we initially address the government's contention that Algee has waived all of them. Waiver, however, involves *intentional* relinquishment, *United States v. Woods,* 301 F.3d 556, 560 (7th Cir.2002), here absent. Algee's arguments are thus forfeited, not waived, and so we review them for plain error. *Id.*

■ Algee contends that his convictions were the result of prosecutorial vindictiveness. In order to be successful on such a claim, a defendant must affirmatively show through objective evidence that the prosecutorial conduct was motivated by some sort of animus. *United States v. Spears,* 159 F.3d 1081, 1086 (7th Cir.1998). Algee gives four examples that he says shows animus in this case: (1) he faced a greater penalty under the federal charges than he received in state court for the same conduct; (2) the federal charges "were brought by the prosecutors who had prosecuted Algee on at least four prior occasions in Illinois state court and lost"; (3) the government "lodged allegations that Christenson had engaged in illegal

conduct, ultimately leading to his disqualification as Algee's counsel of choice"; and (4) the government moved for an upward departure from the sentencing guidelines based on an under-representation of Algee's criminal history. These allegations do not rise to the level necessary to establish prosecutorial vindictiveness, especially under the lens of plain-error review. First, we note that Algee actually received a *lesser* sentence in federal court than he did in state court for the same conduct— fifteen years on the federal firearms charges compared to a forty-year sentence on the state charges. Also, the fact that there was some overlap between the personnel in the state prosecutor's office and the United States Attorney's office does not support a finding of prosecutorial vindictiveness. *United States v. Heidecke,* 900 F.2d 1155, 1160 (7th Cir.1990). Algee maintains that W. Charles Grace, the United States Attorney for the Southern District of Illinois at the time this case was filed, had "previously failed after at least four attempts ... to convict Algee" and had displayed "intense personal animus towards Algee." Grace, however, recused himself from Algee's federal case, and so Algee cannot sustain that Grace's alleged animus was the driving force behind the prosecution. Finally, Algee gives no explanation how vindictiveness is shown by the government's actions in moving for disqualification of an attorney hampered by a conflict of interest, or in moving for an upward departure authorized by the sentencing guidelines.

 Algee next advances that his federal prosecution was barred by double jeopardy. As Algee concedes, however, the Double Jeopardy Clause does not apply when two different sovereigns are involved. *United States v. Ray,* 238 F.3d 828, 835 (7th Cir.2001). Algee attempts to get around the dual-sovereignty doctrine by invoking what is called the "sham prosecution" exception. But this concept is a very narrow one (if it exists at all, *see United States v. Tirrell,* 120 F.3d 670, 677 (7th Cir.1997)) and would apply only if the defendant shows that the second sovereign was acting as a "mere puppet" of the first. *Id.* Algee has not presented such a case. Though Algee makes much of the fact that United States Attorney Grace had previously prosecuted him in state court, he does not explain how this prior professional activity establishes that the federal prosecution was a "sham." Algee's otherwise unsupported argument fails.

Algee's next contention—that his conviction on one of the firearms counts was the result of an impermissibly broadened indictment—has more merit. Count 3 of the superseding indictment charged Algee with knowingly possessing, after having previously been convicted of a felony, a firearm, *"that is* a Norinco, model SKS, 7.62 caliber, semi-automatic rifle, and a Harrington and Richardson, model 'Victor,' .22 caliber revolver." At trial, however, evidence of five firearms, including the two listed in the superseding indictment, were introduced. Further, the jury was instructed that it had to conclude only that Algee "knowingly possessed *a* firearm" to find him guilty on the count.

The facts of this case are much like those in *United States v. Leichtnam,* 948 F.2d 370 (7th Cir.1991), where the indictment alleged that the defendant "did knowingly use and carry a firearm, *to wit:* a Mossberg rifle, Model 250CA." *Id.* at 374 (emphasis added). At trial two additional guns were put into evidence, and the jury was instructed that a conviction hinged on proof that the defendant "intentionally used or carried a firearm." *Id.* at 374–75. We concluded that the indictment had been impermissibly broadened. The Mossberg weapon, we said, was an essential part of the charge; thus, the evidence of additional firearms, combined with the faulty jury instruction, allowed the trial

**1016**

jury to convict the defendant on charges that the grand jury never made against him. *Id.* at 379.

There is, however, a crucial distinction between *Leichtnam* and this case. In *Leichtnam* we did not review the defendant's arguments under the plain-error standard because the government had not argued forfeiture on appeal. *Id.* at 375. But had our review been limited to a search for plain error, we indicated that the conviction would likely have been upheld as there was enough evidence to support a finding that the defendant had used and carried the specific firearm identified in the indictment. *Id.* Here the government contends that Algee is precluded from raising his arguments. Because Algee forfeited the issue he had to establish not only that there was error and that it was plain, but also that the error affected "substantial rights." *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Ackley,* 296 F.3d 603, 606 (7th Cir.2002). Algee has not even attempted to meet this burden. Instead, he maintains that the government "cannot prove that the jury did not convict Algee on Count III based upon the evidence introduced regarding the three additional firearms not specifically listed in the Superseding Indictment." But as we have already said, the burden of persuasion was on *Algee* with respect to prejudice; the placing of this burden on the defendant rather than the government is a specific requirement of plain-error review. *Olano,* 507 U.S. at 734, 113 S.Ct. 1770. And it is unlikely that Algee could have established prejudice in any case. As the government points out, there was an abundance of evidence proving that Algee did knowingly possess the two firearms specifically listed in the superseding indictment.

Algee also contends that his conviction for using a firearm during a drug-trafficking offense resulted from an impermissible broadening of the indictment. But after examining his argument, we conclude that it is best characterized as a challenge to the sufficiency of the evidence. Specifically, Algee maintains that the government introduced no evidence supporting the charge other than the testimony of Battles and Gates, both of whom, Algee says, are admitted liars. Credibility determinations, however, are within the province of the jury, and we will not reverse them just because the credited testimony comes from confessed law-breakers or known liars. *United States v. Wright,* 218 F.3d 812, 813 (7th Cir.2000). Algee offers no other reason why the testimony was wrongly credited, and so we conclude that there was sufficient evidence to support his conviction on this charge.

Finally, relying on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Algee argues that his sentence on the crack-cocaine conviction is unconstitutional because the district court held him accountable for drug quantities that were not submitted to the jury and proved beyond a reasonable doubt. Though Algee concedes that his twenty-year sentence falls within the statutory cap, *see* 21 U.S.C. § 841(b)(1)(A), he contends that *Apprendi* also governs proof of events that determine the mandatory *minimum* penalty. We have consistently rejected such arguments, *e.g., United States v. Nubuor,* 274 F.3d 435, 444 (7th Cir. 2001), and see no reason why we should hold differently here.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.